**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| KRISTIN GUTIERREZ-CLARKE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CALL-ON-DOC, INC. d/b/a CALLONDOC.COM,<br><br>Defendant. | Case No.: 3:26-cv-235<br><br>**DEMAND FOR A JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Kristin Gutierrez-Clarke, individually and on behalf of all others similarly situated, by and through undersigned counsel, alleges, upon personal knowledge as to her own acts and experiences and, where indicated, upon information and good faith belief, against Call-On-Doc, Inc., d/b/a CallOnDoc.com, ("Call-On-Doc" or "Defendant"), as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of a class of similarly situated individuals whose highly sensitive protected health information ("PHI") and personally identifiable information ("PII") (collectively, "Sensitive Information") was compromised due to Defendant's failure to adequately secure, monitor, and maintain its IT systems and networks.

2. Defendant operates Call-On-Doc, a telehealth platform that provides online medical consultations, prescription services, and other healthcare services directly to patients across the United States, processing and storing vast amounts of Sensitive Information as part of these services.

3. In early December 2024, Defendant's systems were breached in a ransomware attack which, per online reports, resulted in the exfiltration of 1,144,223 patient records containing Sensitive Information (the "Data Breach").[1]

4. The Data Breach resulted in unauthorized access to and exfiltration of Sensitive Information, including Patient Codes, Transaction Numbers, Patient Names, Patient Addresses, Patient Cities, Patient States, Patient Zip Codes, Patient Countries, Patient Phone Numbers, Patient Email Addresses, Medical Categories, Medical Conditions, and Services/Prescriptions.

5. As of the filing of this Complaint, Defendant has failed to notify affected individuals of the Data Breach. Plaintiff and Class Members have not received any notification from Defendant regarding the compromise of their Sensitive Information.

6. The exposure of Sensitive Information to unauthorized threat actors leaves Plaintiff and Class Members vulnerable to identity theft, medical fraud, financial crimes, and other forms of harm. Such information is of high value to cybercriminals and can be misused for years after initial compromise.

7. Plaintiff and Class Members have already taken significant steps to mitigate these risks, including contacting insurers and financial institutions, placing fraud alerts and credit freezes, and closely monitoring personal and medical accounts for suspicious activity.

8. The risks resulting from Defendant's misconduct are ongoing. Plaintiff and Class Members remain at substantial and continuing risk of identity theft, financial loss, and loss of privacy as a result of the Data Breach.

---

[1] *Call-On-Doc allegedly had a breach affecting more than 1 million patients. They've yet to comment.*, https://databreaches.net/2026/01/24/call-on-doc-allegedly-had-a-breach-affecting-more-than-1-million-patients-theyve-yet-to-comment/.

9. Plaintiff seeks damages, injunctive and equitable relief, attorneys' fees, costs, and expenses on behalf of herself and all similarly situated individuals whose Sensitive Information was compromised due to Defendant's conduct.

10. Accordingly, Plaintiff asserts the following causes of action: (i) Negligence, (ii) Negligence Per Se, (iii) Breach of Implied Contract, (iv) Unjust Enrichment, and (v) Declaratory Judgment.

## PARTIES

11. Plaintiff Kristin Gutierrez-Clarke is a natural person and citizen of Ohio residing in Columbus, Ohio.

12. Defendant Call-On-Doc, Inc. is a corporation organized under the laws of Texas, maintaining its principal place of business at 8355 Walnut Hill Lane, Dallas, Texas 75231.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because there are more than 100 alleged putative class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendant.

14. This Court has personal jurisdiction over Defendant in this action because Defendant is headquartered in this District, regularly conducts business in this District, and has sufficient minimum contacts in this District.

15. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Defendant Collected, Maintained, and Stored Sensitive Information.

16. Defendant operates Call-On-Doc, a telehealth platform that offers online medical consultations, prescription services, and healthcare services directly to patients throughout the United States.

17. Through its telehealth platform, Defendant processes, stores, and maintains vast amounts of Sensitive Information belonging to patients who use its services.

18. When patients use Defendant's telehealth services, they are required to provide their Sensitive Information—including, but not limited to, names, addresses, phone numbers, email addresses, medical conditions, and prescription information—which is then stored on Defendant's systems.

19. Patients are required to provide this information to Defendant to receive telehealth consultations and prescription services. Patients reasonably expect that Defendant will protect this Sensitive Information from unauthorized access and disclosure.

20. By collecting, storing, and processing this Sensitive Information, Defendant assumed a duty to adequately protect it from unauthorized access and disclosure.

21. Defendant made promises and representations that the Sensitive Information collected would be kept safe and confidential, and that the privacy of that information would be maintained. In the privacy policy on its website (the "Privacy Policy"), Defendant makes representations including statements that:

> We use commercially reasonable tools and techniques to protect against unauthorized access to our systems.
>
> We restrict access to private information to those who need such access in the course of their duties for us.

> We keep automatically collected data and voluntarily collected data separate at all times.
>
> We use internal encryption on all data stores that house voluntarily captured data.[2]

22. Due to the nature and volume of PHI and PII that Defendant maintains, its systems are an attractive target for cybercriminals seeking to exploit or monetize patient data by selling it on the dark web, engineering identity theft and fraud, engaging in blackmail, and more.

23. Defendant represents that it understands and prioritizes the importance of safeguarding individual personal and health information.

24. Plaintiff and Class Members, as patients who used Defendant's telehealth services, reasonably relied on Defendant to implement and maintain adequate data security.

25. Defendant derives substantial revenue from its provision of telehealth services and, in doing so, collects and stores the Sensitive Information of patients like Plaintiff and Class Members.

B. **Defendant's Data Breach Exposed Patients' Sensitive Information.**

26. In early December 2024, Defendant's IT environment was breached by unauthorized third parties.[3]

27. The Data Breach resulted in the exfiltration of 1,144,223 patient records and compromised Sensitive Information includes: Patient Codes, Transaction Numbers, Patient Names, Patient Addresses, Patient Cities, Patient States, Patient Zip Codes, Patient Countries,

---

[2] *Privacy Policy*, https://www.callondoc.com/en/privacy/consultation?_gl=1*1raypy9*_up*MQ..*_gs*MQ..&gclid=Cj0KCQiA4eHLBhCzARIsAJ2NZoJz3ukJnC7h5cwwoqY3J9AGSrX7cbtexqBms4NlXkLgl2uD95MpWowaAuAEEALw_wcB&gbraid=0AAAADNDh2NIPuaeAIYGgsYZF6c6ygr5F.

[3] *See* n. 1 *supra.*

Patient Phone Numbers, Patient Email Addresses, Medical Categories, Medical Conditions, and Services/Prescriptions.[4]

28. As of the date of this filing, Defendant has failed to notify affected individuals about the Data Breach. Neither Plaintiff nor, upon information and belief, any other Class Members have received notice from Defendant regarding the compromise of their Sensitive Information.

29. Defendant's failure to notify impacted individuals violates federal and state data breach notification laws, including the Health Insurance Portability and Accountability Act ("HIPAA"), which requires prompt disclosure following the unauthorized acquisition of PHI.

30. Defendant could have prevented the Data Breach by implementing adequate security safeguards, conducting proper network monitoring, maintaining appropriate cybersecurity measures consistent with industry standards, and encrypting the data stored within its systems.

31. Instead, Defendant failed to use reasonable security practices and did not adequately protect Sensitive Information, nor did it ensure appropriate access controls and monitoring of its systems.

32. As a result of these failures, unauthorized actors were able to access and exfiltrate PHI and PII belonging to Plaintiff and Class Members.

33. The nature of this attack poses particular risks to Plaintiff and Class Members, as their Sensitive Information has been exfiltrated and could be released on the dark web, where it would be accessible to multiple criminal actors for years to come.

34. Given that Defendant was storing the Sensitive Information of Plaintiff and Class Members and knew or should have known of the serious risk and harm caused by a data breach, Defendant was obligated to implement reasonable measures to prevent and detect cyber-attacks,

[4] *Id.*

such as those recommended by the Federal Trade Commission (the "FTC"), required under HIPAA, and promoted by data security experts and other agencies.

35. That obligation stems from the foreseeable risk of a data breach given that Defendant collected, stored, and had access to a swath of highly sensitive patient and employee records and data and, additionally, because other highly publicized data breaches at numerous healthcare institutions put Defendant on notice that the personal and sensitive data it stores might be targeted by cybercriminals.

36. Indeed, cyberattacks on medical systems and healthcare companies have become so notorious that the Federal Bureau of Investigation and United States Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[5]

37. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in recent years.[6]

38. Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and therefore to anyone in Defendant's industry, including Defendant.

39. Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry and the prevalence of healthcare data breaches, Defendant inexplicably failed to adopt sufficient data security process by, without limitation:

a. Failing to properly select information security partners;

---

[5] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware,* Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomeware.

[6] *See* Maria Henriquez*, Iowa City Hospital Suffers Phishing Attack,* Security Magazine (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

b. Failing to ensure the proper monitoring and logging of the ingress and egress of network traffic;

c. Failing to ensure the proper monitoring and logging of file access and modifications;

d. Failing to ensure the proper training its own and its technology partners' employees as to cybersecurity best practices;

e. Failing to ensure reasonable or adequate computer systems and data security practices to safeguard the PII and PHI of Plaintiff and Class Members;

f. Failure to timely and accurately send notice indicating that Plaintiff's and Class Members' PII and PHI had been improperly acquired or accessed;

g. Knowingly disregarding standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII and PHI; and

h. Failing to provide adequate supervision and oversight of the PII and PHI with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII and PHI of Plaintiff and Class Members, misuse the PHI/PII and potentially disclose it to others without consent.

40. Upon information and belief, Defendant further failed to detect and respond to data security incidents, to ensure the proper encryption of Plaintiff's and Class Members' Sensitive Information, and to monitor user behavior and activity to identify possible threats.

41. Time is of the essence when highly sensitive PII and PHI is subject to unauthorized access and/or acquisition.

42. The disclosed, accessed, and/or acquired PII and PHI of Plaintiff and Class Members is, upon information and good faith belief, already available on the Dark Web.

43. Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals.

44. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the publication of their PHI and PII onto the Dark Web.

45. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

46. Despite the highly sensitive nature of the information that Defendant obtained, maintained, and stored and the prevalence of healthcare data breaches, Defendant inexplicably failed to take appropriate steps to safeguard the Sensitive Information of Plaintiff and Class Members from being compromised.

47. The Data Breach itself, and information about the breach to date, including its length, the need to remediate Defendant's cybersecurity, the number of people impacted, and the sensitive nature of the impacted data collectively demonstrate Defendant failed to implement reasonable measures to prevent cyber-attacks and exposure of the Sensitive Information it oversaw.

**C. Defendant Failed to Comply with FTC Guidelines.**

48. The FTC recognizes that consumer data is a lucrative (and valuable) form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour underscored this point by reiterating that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[7]

---

[7] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), https://www.ftc.gov/news-events/news/speeches/remarks-ftc-exploring-privacy-roundtable.

49. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

50. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for business.

51. Those guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[8]

52. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third party service providers have implemented reasonable security measures.[9]

53. The FTC has also issued, and regularly updates, guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business.

54. According to the FTC, reasonable data security protocols require:

a. Encrypting the information stored on computer networks;

b. Retaining payment card information only as long as necessary;

c. Properly disposing of personal information that is no longer needed or can be disposed pursuant to relevant state and federal laws;

---

[8] *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Nov. 27, 2024).

[9] *Start with Security: A Guide for Business* (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

d. Limiting administrative access to business systems

e. Using industry approved activity;

f. Monitoring activity on networks to uncover non-approved activity;

g. Verifying that privacy and security features function properly;

h. Testing for common vulnerabilities; and

i. Updating and patching third-party software.[10]

55. The FTC cautions businesses that failure to protect Sensitive Information and the resulting data breaches can destroy consumers' finances, credit history, and reputations, and can take time, money, and patience to resolve the effect.[11] Indeed, the FTC treats the failure to implement reasonable and adequate data security measures-like Defendant failed to do here-as an unfair act prohibited by Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.

56. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act of practice prohibited by Section 5 of the FTC Act.

57. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

58. These FTC enforcement actions include actions against healthcare providers and partners like Defendant.

59. Defendant failed to properly implement basic data security practices.

---

[10] *Id.*

[11] *See Taking Charge, What to Do if Your Identity is Stolen*, at 3 (Jan. 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen.

60. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

61. On information and good faith belief Plaintiff alleges that Defendant was at all times fully aware of the obligation to protect the Sensitive Information of its clients' patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D. Defendant Failed to Comply with Industry Standards.**

62. As shown above, experts studying cybersecurity routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

63. Several best practices have been identified that at a minimum should be implemented by companies operating in the healthcare industry like Defendant, including but not limited to educating all employees; monitoring any potential vulnerabilities in third-party software; applying available mitigations for third-party software vulnerabilities; using strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

64. The United States Government and the United States Cybersecurity & Infrastructure Agency recommend several similar and supplemental measures to prevent and detect cyberattacks, including, but not limited to: implement an awareness and training program, enabling strong spam filters, scanning incoming and outgoing emails, configuring firewalls,

automating anti-virus and anti-malware programs, managing privileged accounts, configuring access controls, disabling remote desktop protocol, and updating and patching computers.

65. Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

66. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1[12] (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet's Critical Security Controls[13] (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67. The FBI's Internet Crime Complaint (IC3) 2019 estimated that there was more than $3.5 billion in losses to individual and business victims due to identity fraud in that year alone. That same report identified "rapid reporting" as a tool to help law enforcement stop fraudulent transactions and mitigate losses.

68. These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

---

[12] Nat'l Inst. of Standards & Tech., *Framework for Improving Critical Infrastructure Cybersecurity* (2018), https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.

[13] *See The 18 CIS Critical Security Controls*, https://www.cise`curity.org/controls/cis-controls-list.

**E. Defendant's Conduct and Insufficient Data Security Violate HIPAA.**

69. HIPAA requires covered entities and business associates to protect against reasonably anticipated threats to the security of sensitive patient health information.

70. Business associates must implement safeguards to ensure the confidentiality and availability of PII and PHI. Safeguards must include physical, technical, and administrative components.[14]

71. Title II of HIPAA contains what are known as the Administrative Simplification provisions.[15] These provisions require, among other things, that the Department of Health and Human Services ("HHS") creates rules to streamline the standards for handling PII and PHI, like the data Defendant left unguarded.

72. The HHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. §164.306(a)(1)-(4); 45 C.F.R. §164.308(a)(1)(i); 45 C.F.R. §164.308(a)(1)(ii)(D), and 45 C.F.R. §164.530(b).

73. A data breach, such as the one Defendant experienced, is considered a breach under the HIPAA rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under [the HIPAA Privacy Rule] which compromises the privacy of the PHI."[16] Business associates have direct liability for breaches under 45 C.F.R §164.402 *et seq.*

---

[14] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

[15] 42 U.S.C. § 1301, *et seq.*

[16] *See* C.F.R. § 164.40.

74. The Data Breach resulted from a combination of insufficiencies that Defendant failed to comply with safeguards maintained by HIPAA regulations and its obligations to covered entities.

75. Furthermore, persons, including business associates, that receive information from a confidential communication or record, as described above, "may not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained."[17]

76. Defendant's Data Breach and unauthorized disclosure of Plaintiff's and Class Members' Sensitive Information to malicious third parties violated Plaintiff's and Class Members' rights to privacy and confidentiality related to their receipt of healthcare services and fell below the applicable standards for safeguarding the confidential Sensitive Information of Plaintiff and Class Members.

**F. The Data Breach Resulted from Defendant's Failure to Properly Maintain and Safeguard its Systems and Data**

77. Defendant breached its obligation to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data.

78. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. Failing to adequately protect its clients' and its clients' patients' Sensitive Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

[17] 45 C.F.R. § 164.504(e)(1)(ii).

d. Failing to ensure that its vendors with access to its computer systems employed reasonable security procedures;

e. Failing to detect unauthorized ingress into its systems;

f. Failing to implement and monitor reasonable network segmentation to detect unauthorized travel within its systems, including to and from areas containing the most sensitive data;

g. Failing to detect unauthorized exfiltration of the most sensitive data on its system;

h. Failing to train its employees in the proper handling of emails containing Sensitive Information and maintain adequate email security practices;

i. Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. §164.306(a)(1);

j. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1);

k. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1)(i);

l. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. §164.308(a)(1)(ii)(D);

m. Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

n. Failing to ensure compliance with HIPAA security standard rules by its workforce in violation of 45 C.F.R. §164.306(a)(4);

o. Failing to train all members of its workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out its functions and to maintain security of PHI, in violation of 45 C.F.R. §164.530(b);

p. Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low

probability of assigning meaning without the use of a confidential process or key";

q. Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and

r. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Sensitive Information.

79. Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Sensitive Information. Accordingly, as outlined below, Plaintiff and Class Members now face actual fraud and identity theft as well as increased risk of fraud and identity theft. In addition, Plaintiff and Class Members lost the benefit of the bargain they made with Defendant.

**G. Cyberattacks and Data Breaches Cause Disruption and Put Victims at an Increased Risk of Fraud and Identity Theft.**

80. Cyberattacks and data breaches at companies in the healthcare industry like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

81. Researchers have found that among medical services providers that experience a data security incident, the death rate among patients increased in the months and years after the attack.[18]

82. Researchers have further found that at medical service providers that experienced a data security incident, the incident was associated with deterioration in timeliness and patient outcomes, generally.[19]

---

[18] *See* Nsikan Akpan, *Ransomware and Data Breaches Linked to Uptick in Fatal Heart Attacks,* PBS (Oct. 24, 2019), https://www.pbs.org/newshour/science/ransomeware-and-other-data-breaches-linked-to-uptick-in-fatal-heart-attacks.

[19] *See* Sung J. Choi *et al.*, *Data Breach Remediation Efforts and Their Implications for Hospital Quality*, 54 Health Services Res. 971, 971-80 (2019), https://www.onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203.

83. The United States Government Accountability Office ("GAO") released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[20]

84. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal Sensitive Information is to monetize it.

85. They do this by selling the spoils of their cyberattacks on the black market to identify thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate piece of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim.

86. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique called "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security Number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

87. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove

---

[20] *Report to Congressional Requesters*, GAO, at 2 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (the "GAO Report").

fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[21]

88. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

89. Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[22]

90. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Sensitive Information has considerable market value.

91. Theft of PHI, in particular, is gravely serious. A thief may use customers' and patients' name or health insurance numbers "to see a doctor, get prescription drugs, buy medical devices, submit claims with [an] insurance provider, or get other medical care. If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to use. It could also hurt your credit."[23]

92. Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Sensitive Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data

---

[21] *See IdentityTheft.gov/Steps*, "https://www.identitytheft.gov/steps" (last visited July 16, 2025).

[22] *See, e.g.*, John T. Soma *et al.*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets,* 15 Rich J.L. & Tech. 11, at 3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[23] *What to Know About Medical Identity Theft,* https://www.ftc.gov/articles/what-know-about-medical-identity-theft.

breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

93. There may additionally be a substantial time lag—measured in years—between when harm occurs and when it is discovered, and also between when Sensitive Information and/or financial information is stolen and when it is used.

94. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

95. Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

96. There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

97. Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

98. PHI can sell for as much as $363 per record according to the Infosec Institute.[25]

---

[24] *The GAO Report*, *supra* n.21.

[25] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, Infosec (July 27, 2015), https://www.resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market.

99. PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of the information and damage to victims may continue for years.

100. Medical information is especially valuable to identity thieves.

101. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016—the same as a Facebook account.[26] That pales in comparison with the asking price for medical data, which was selling for $50 and up.[27]

102. Because of the value of its collected and stored data, the healthcare industry has experienced disproportionally higher numbers of data theft events than other industries.

103. For this reason, Defendant knew or should have known about these dangers and strengthened its data systems and data security measures accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet failed to properly prepare for that risk.

**H. Plaintiff's and Class Members' Damages.**

104. Plaintiff and Class Members have been damaged by the compromise of their Sensitive Information in the Data Breach.

105. On information and belief, Plaintiff's and Class Members' Sensitive Information was compromised in the Data Breach and is now in the hands of cybercriminals who accessed the data Defendant held within its systems. The Sensitive Information exposed included Patient Codes,

---

[26] *See* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much* (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong/.

[27] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019) https://news.sophos.com/en-us/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/.

Transaction Numbers, Names, Addresses, Cities, States, Zip Codes, Countries, Phone Numbers, Email Addresses, Medical Categories, Medical Conditions, and Services/Prescriptions.

106. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

107. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach, valuable time Plaintiff and Class Members otherwise would have spent on other activities, including but not limited to work and/or recreation.

108. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

109. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Sensitive Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

110. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

111. Plaintiff and Class Members also suffered a loss of value of their Sensitive Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

112. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members who are current or former patients of Defendant's clients overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards.

113. Part of the price Plaintiff and Class Members paid to Defendant's clients was intended to be used by Defendant to fund adequate data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. As demonstrated by the Data Breach, Defendant failed to fund and provide adequate data security practices. Thus, Plaintiff and the Class Members who are current or former patients of Defendant's clients did not get what they paid for and agreed to.

114. Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably spent to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and,

f. Closely reviewing and monitoring their medical insurance accounts, bank accounts, and credit reports, as well as alerts for identity fraud including their SSNs, for unauthorized activity for years to come.

115. Moreover, Plaintiff and Class Members have an interest in ensuring that their Sensitive Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Sensitive Information is not accessible online or otherwise to unauthorized third parties.

116. Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Sensitive Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

117. As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

**REPRESENTATIVE PLAINTIFF KRISTIN GUTIERREZ-CLARKE'S EXPERIENCE**

118. Plaintiff Kristin Gutierrez-Clarke was a patient who used Defendant's telehealth services.

119. Plaintiff began using Call-On-Doc's telehealth services in or around 2020.

120. As a condition of using Defendant's telehealth services, Plaintiff Gutierrez-Clarke's Sensitive Information was provided to and processed through Defendant's systems.

121. This Sensitive Information was provided to Defendant with the reasonable expectation that Defendant would protect and secure the information from unauthorized access and disclosure.

122. Plaintiff provided her Sensitive Information to Defendant with the reasonable expectation that it would protect and secure her Sensitive Information from unauthorized access and disclosure.

123. Upon information and good faith belief, Plaintiff Gutierrez-Clarke's Sensitive Information—including her Patient Code, Transaction Number, Name, Address, City, State, Zip Code, Country, Phone Number, Email Address, Medical Category, Medical Condition, and/or Service/Prescription information—had been improperly accessed or obtained by unauthorized third parties as a result of the Data Breach.

124. Plaintiff Gutierrez-Clarke reasonably expected and understood that Defendant would take, at a minimum, industry-standard precautions to protect, maintain, and safeguard her Sensitive Information from unauthorized use or disclosure, and would timely notify her of any related data security incidents.

125. Plaintiff Gutierrez-Clarke would not have used Defendant's telehealth services had she known it would fail to take reasonable steps to safeguard her Sensitive Information.

126. Plaintiff Gutierrez-Clarke is very careful about sharing her sensitive PII and PHI. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. She stores any documents containing sensitive information in a safe and secure location or destroys them. Moreover, she diligently chooses unique usernames and passwords for her online accounts.

127. As a result of the Data Breach, Plaintiff Gutierrez-Clarke has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring her credit information, and changing account passwords.

128. Plaintiff Gutierrez-Clarke has spent significant time responding to the Data Breach and will continue to spend valuable time that otherwise would have been spent on other activities, including but not limited to work and/or recreation.

129. Plaintiff Gutierrez-Clarke suffered actual injury from the exposure and/or theft of her Sensitive Information as a result of the Data Breach, including: (a) entrusting PII and PHI to Defendant under the mistaken belief that adequate data security was in place; (b) damages to and diminution in the value of her Sensitive Information—a form of intangible property; (c) loss of privacy; (d) continuous imminent and impending risk of financial, medical, and identity fraud and theft; and (e) time and expense of mitigation efforts.

130. Due to the Data Breach, Plaintiff Gutierrez-Clarke anticipates spending considerable additional time and money on an ongoing basis to mitigate and address the resulting harm, including monitoring her medical history, health insurance data, and financial accounts.

131. Plaintiff Gutierrez-Clarke has already experienced a sharp increase in spam calls and/or texts and phishing attempts.

132. Knowing that unauthorized actors accessed and/or stole her PII and PHI—which may be used for identity theft, fraud, and related harms—has caused Plaintiff Gutierrez-Clarke's anxiety, stress, and fear.

133. Plaintiff Gutierrez-Clarke has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and experiences ongoing concern and anxiety over the loss of her privacy and the threat of cybercriminal misuse.

134. Plaintiff Gutierrez-Clarke is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Sensitive Information being in unauthorized hands.

135. Plaintiff Gutierrez-Clarke has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

136. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

137. The Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States whose Sensitive Information was impacted in the Data Breach (the "Class").

138. The following people are excluded from the Class: (i) any judge or magistrate judge presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or their parents have a controlling interest, and their current or former officers and directors; and (iii) the legal representatives, successors, and assigns of any such excluded persons.

139. Numerosity: The exact number of members of the Class is unknown but, upon information and belief, it is estimated to number 1,144,223 individuals, and individual joinder in this case is impracticable.

140. Typicality: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff, and the members of the Class, sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices.

141. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class.

142. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a. Whether Defendant violated the laws asserted herein, including statutory privacy laws;

b. Whether Defendant had a duty to use reasonable care to safeguard Plaintiff's and Class Members' Sensitive Information;

c. Whether Defendant breached the duty to use reasonable care to safeguard Plaintiff's and Class Members' Sensitive Information;

d. Whether Defendant breached its contractual promises to safeguard Plaintiff's and Class Members' Sensitive Information;

e. Whether Defendant knew or should have known about the inadequacies of its data security policies;

f. Whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and Class Members' Sensitive Information;

g. Whether the proper data security measures, policies, procedures, and protocols were in place;

h. Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

i. Whether Defendant's method of informing Plaintiff and other members of the Class was unreasonable;

j. Whether Defendant's conduct was likely to deceive the public;

k. Whether Defendant is liable for negligence or gross negligence;

l. Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

m. Whether Plaintiff and members of the Class were damaged as a proximate cause of the Data Breach;

n. What the proper measure of damages is; and

o. Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

143. Superiority: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable.

144. A class action is superior to individual litigation because:

a. The amount of damages available to an individual plaintiff is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedural device;

b. Individualized litigation would present a potential for inconsistent or contradictory judgments; and

c. The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

145. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues.

146. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### *(On Behalf of Plaintiff & the Class)*

147. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

148. Defendant required its patients, including Plaintiff and Class Members, to submit their Sensitive Information in order to receive telehealth services.

149. By collecting, storing, processing, and sharing this data for commercial purposes, Defendant owed a duty of care to use reasonable means to secure and safeguard its systems—and

Plaintiff's and Class Members' Sensitive Information held within them—to prevent unauthorized disclosure and theft.

150. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, federal regulations, and the requirements discussed herein.

151. Plaintiff and Class Members were a well-defined, foreseeable, and probable group of individuals whom Defendant knew, or should have known, would be injured by inadequate data security measures.

152. Given the volume and sensitivity of the data stored and managed by Defendant—including PII and PHI—Defendant knew or should have known it was a likely target for cybercriminals and had a duty to employ reasonable and effective safeguards.

153. PII and PHI are highly valuable, and Defendant knew or should have known the risks involved in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members.

154. Defendant's duty of care also arose from the special relationship between Defendant and its patients—a relationship recognized by common law and by regulations including, but not limited to, HIPAA.

155. Defendant's duties under HIPAA included "reasonably protecting" confidential data from "any intentional or unintentional use or disclosure" and implementing "appropriate administrative, technical, and physical safeguards" to preserve the privacy and security of protected health information.

156. Defendant was also obligated to employ reasonable security measures under Section 5 of the FTC Act, which prohibits "unfair...practices in or affecting commerce," including the failure to use reasonable safeguards for protecting confidential information.

157. Defendant's duty to safeguard Sensitive Information arose not only from statutes and regulations, but also from industry standards requiring that entities storing such data implement effective and reasonable security protocols.

158. Defendant breached these duties by failing to implement reasonable security measures. Its specific negligent acts and omissions include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate data security measures;

b. Failing to adequately monitor its networks and systems;

c. Failing to implement effective breach mitigation policies and procedures;

d. Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

e. Failing to detect in a timely manner that such information had been compromised; and

f. Failing to timely notify Plaintiff and Class Members so that they could mitigate the risks of identity theft and other harm.

159. Defendant further breached its duties by ignoring known data security deficiencies and allowing unauthorized third parties to access the Sensitive Information of Plaintiff and Class Members.

160. Defendant's failure to follow both federal regulatory standards and widely accepted industry norms reflects a lack of reasonable care and constitutes negligence.

161. But for Defendant's wrongful and negligent conduct, Plaintiff's and Class Members' Sensitive Information would not have been compromised, exfiltrated, or viewed by unauthorized persons.

162. It was foreseeable that Defendant's failure to implement adequate safeguards would result in harm to Plaintiff and Class Members, particularly given the frequency of cyberattacks targeting the healthcare industry.

163. Thus, it was foreseeable that Defendant's conduct would cause injury to Plaintiff and Class Members in the form of identity theft, fraud, financial loss, and emotional distress.

164. As a result of Defendant's misconduct, the Sensitive Information of Plaintiff and Class Members was compromised, placing them at a heightened and ongoing risk of identity theft, fraud, and unauthorized disclosure.

165. Plaintiff and Class Members are entitled to compensatory and consequential damages for the harm they suffered as a result of the data breach.

166. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) enhance its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) continue providing adequate identity theft protection and credit monitoring services to Plaintiff and Class Members.

**COUNT II**
**NEGLIGENCE PER SE**
***(On Behalf of Plaintiff & the Class)***

167. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

168. Plaintiff alleges this negligence per se theory as an alternative to Count I.

169. Pursuant to the laws set forth herein, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, Defendant was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Sensitive Information.

170. Pursuant to the FTC Act, Defendant had a duty to provide adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

171. Moreover, Plaintiff's and Class Members' injuries are precisely the type of injuries that the FTC Act guards against.

172. Pursuant to HIPAA, Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Sensitive Information.

173. Pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule.

174. Plaintiff and Class Members are within the class of persons that HIPAA was intended to protect. And the injuries that Defendant inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against.

175. Under the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendant had a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" affected persons so that they could take action to protect themselves.

176. Moreover, HITECH provides that a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, in the case of a breach of such information, notify each individual whose unsecured protected health information has been, or is reasonably believed to have been, accessed, acquired, or disclosed as a result of such breach.

177. Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII and PHI.

178. Defendant owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their Sensitive Information.

179. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols.

180. Defendant breached its duties to Plaintiff and Class Members under the FTC Act, HIPAA, and HITECH by failing to provide reasonable or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. But for Defendant's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Information;

b. Failing to comply with—and thus violating—HIPAA and its regulations;

c. Failing to comply with—and thus violating—HITECH and its regulations;

d. Failing to comply with—and thus violating—the FTC Act and its regulations;

e. Failing to adequately monitor the secuPrity of its networks and systems;

f. Failing to have in place mitigation policies and procedures;

g. Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

h. Failing to detect in a timely manner that Plaintiff's and Class Members' Sensitive Information had been compromised; and

i. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

181. Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

182. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

183. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.

184. Defendant's negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injuries-in-fact and damages.

185. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

186. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiff and all Class Members.

## COUNT III
## BREACH OF IMPLIED CONTRACT
***(On Behalf of Plaintiff & the Class)***

187. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

188. Defendant required Plaintiff and Class Members to provide and entrust their Sensitive Information as a condition of obtaining telehealth services from Defendant.

189. Plaintiff and Class Members paid money to Defendant in exchange for goods and services, as well as Defendant's promise to protect their Sensitive Information from unauthorized disclosure.

190. In its Privacy Policy and elsewhere, Defendant promised to comply with legal and industry standards, including HIPAA, and to make sure that Plaintiff's and Class Members' Sensitive Information would remain protected.

191. Implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that Defendant would maintain the Sensitive Information confidentially and securely.

192. Defendant had an implied duty of good faith to ensure that the Sensitive Information of Plaintiff and Class Members in its possession was used only as authorized, such as to provide telehealth consultations and related medical services.

193. Defendant had an implied duty to protect the Sensitive Information of Plaintiff and Class Members from unauthorized disclosure or uses.

194. Additionally, Defendant implicitly promised to retain this Sensitive Information only under conditions that kept such information secure and confidential.

195. Through its course of conduct, Defendant, Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Sensitive Information.

196. Defendant solicited and invited Plaintiff and Class Members to provide their Sensitive Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Sensitive Information to Defendant.

197. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant. Defendant did not.

198. Defendant breached the implied contracts with Plaintiff and Class Members by failing to safeguard and protect Plaintiff's and Class Members' Sensitive Information; failing to

provide timely and accurate notice to Plaintiff and Class Members that their Sensitive Information was compromised as a result of the Data Breach; and violating industry standards as well as legal obligations that are necessarily incorporated into implied contracts between Plaintiff, Class Members, and Defendant.

199. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to comply with its promise to abide by HIPAA.

200. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. §164.306(a)(1).

201. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1).

202. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. §164.306(a)(2).

203. Defendant's failures to meet these promises constitute breaches of the implied contracts.

204. Furthermore, the failure to meet its confidentiality and privacy obligations resulted in Defendant providing goods and services to Plaintiff and Class Members that were of a diminished value.

205. Defendant's acts and omissions have materially affected the intended purpose of the implied contracts requiring Plaintiff and Class Members to provide their Sensitive Information in exchange for telehealth services.

206. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the possibility of an illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

207. As a direct and proximate result of Defendant's above-described breach of contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT IV
### UNJUST ENRICHMENT
### *(On Behalf of Plaintiff & the Class)*

208. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

209. This claim is pleaded solely in the alternative to Plaintiff's breach of implied contract claim.

210. Plaintiff and Class Members conferred a monetary benefit on Defendant by paying money for telehealth services, a portion of which was intended to have been used by Defendant for data security measures to secure Plaintiff's and Class Members' Sensitive Information.

211. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Sensitive Information.

212. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

213. Defendant acquired the monetary benefit, PII, and PHI through inequitable means in that Defendant failed to disclose the inadequate security practices, as described herein, and failed to maintain adequate data security.

214. If Plaintiff and Class Members knew that Defendant had not secured their Sensitive Information, they would not have agreed to give their money—or disclosed their data—to Defendant.

215. Plaintiff and Class Members have no adequate remedy at law.

216. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered—and will continue to suffer—a host of injuries.

217. The benefits that Defendant derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members.

218. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds it received as a result of its conduct and the Data Breach alleged herein.

**COUNT V**
**DECLARATORY JUDGMENT**
**28 U.S.C §2201**
***(On Behalf of Plaintiff & the Class)***

219. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

220. An actual controversy has arisen and now exists between Plaintiff and Class Members on the one hand, and Defendant on the other, concerning their respective rights and duties with respect to the Data Breach and Defendant's data security obligations going forward.

221. Plaintiff and Class Members contend that Defendant's data security measures were and remain inadequate and that Defendant has ongoing duties to implement and maintain reasonable safeguards to protect their PII that remains in Defendant's possession.

222. Plaintiff and Class Members further contend that Defendant has not adequately remediated the security vulnerabilities that led to the Data Breach and that their Sensitive Information remains at imminent risk of further unauthorized access and disclosure.

223. Defendant has not provided adequate assurances that it has implemented sufficient security measures to prevent future breaches or that all copies of the exfiltrated data have been recovered or destroyed.

224. Pursuant to 28 U.S.C § 2201, this Court may declare the rights and legal relations of the parties to this action.

225. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties with respect to:

a. Whether Defendant's current data security measures are adequate to protect Plaintiff's and Class Members' Sensitive Information;

b. Whether Defendant must implement specific industry-standard security measures and protocols;

c. Whether Defendant must submit to regular third-party security audits and assessments;

d. Whether Defendant must provide ongoing credit monitoring and identity theft protection services to Class Members;

e. Whether Defendant must destroy or return any unnecessary Sensitive Information in its possession; and

f. Whether Defendant must provide complete and transparent reporting regarding the Data Breach and remediation efforts.

226. Plaintiff and Class Members have no adequate remedy at law for Defendant's ongoing failure to implement adequate security measures, making declaratory relief appropriate.

227. Accordingly, Plaintiff and Class Members seek a declaration of their rights and Defendant's corresponding duties regarding data security practices and breach remediation measures.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kristin Gutierrez-Clarke, on behalf of herself and all persons similarly situated, prays for judgment in favor of themselves against Defendant Call-On-Doc, Inc., and respectfully requests that this Honorable Court enter an order:

A. Certifying this action as a Class action and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

B. Granting equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Sensitive Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C. Granting equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Sensitive Information compromised during the Data Breach;

D. Granting equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E. Requiring Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

F. Awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G. Awarding punitive damages, as allowable by law;

H. Awarding attorneys' fees and costs under the common fund doctrine, and any other applicable law;

I. Awarding costs and any other expense, including expert witness fees, incurred by Plaintiff in connection with this action;

J. Awarding pre- and post-judgment interest on any amounts awarded; and

K. All such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 27, 2026

Respectfully submitted,

*/s/Leigh S. Montgomery*
Leigh S. Montgomery
Texas Bar No. 24052214
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose Blvd, Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
E: lmontgomery@eksm.com

David S. Almeida*
Britany A. Kabakov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave.
Chicago, Illinois, 60614
Tel.: (708) 437-6476
david@almeidalawgroup.com
britany@almeidalawgroup.com

**Pro hac vice* applications forthcoming
*Attorneys for Plaintiff & the Proposed Class*